N. J. CARTER, EX'X, v. S. M. HAWKINS ET AL.

(Case No. 1758.)

1. HOMESTEAD.— Where the evidence shows that the mortgaged property had been abandoned as a homestead by the mortgagor, and that he had established his home elsewhere, the homestead right is gone.

2. NOTICE— MORTGAGE — INNOCENT PURCHASER — DESCRIPTION.— If A mortgages to B a lot of land, describing it thus: "The east half of lot 20, in Greenville, it being the west half of said lot 20," it would leave a doubt as to which half he intended to convey, and a subsequent purchaser could not, under such a state of facts, claim as a *bona fide* purchaser of the east half, and say that by such a description the vendor intended to convey the west half.

3. SAME.— The general rule is, that where the discrepancy as to the property intended to be mortgaged, and that actually described in the recorded instrument, is of a substantial nature, the record will not operate as notice to subsequent purchasers; but where the description is ambiguous, or inconsistent one part with another, the first declaring that the land mortgaged is that which the purchaser proposes to buy, and then giving such particulars as to boundaries as would place it upon a different tract, in such case the inconsistency in the description would affect with notice one desiring to purchase.

4. SAME. — If a purchaser have any knowledge of an error in the description of the property mortgaged, or from his knowledge of the property is able to interpret the record, giving it the meaning intended to be conveyed, it would be sufficient to charge him with notice. Citing Wade on Notice, § 185; Erickson *v.* Rafferty, 79 Ill., 209.

APPEAL from Hunt. Tried below before the Hon. T. D. Montrose, Special Judge.

On the 14th day of January, 1880, S. M. Hawkins executed his note for $175 to C. B. Carter, appellant's testator, and on the same day, to secure the payment of the note, he executed to C. B. Carter a mortgage on land containing the following description and field notes, to wit: "The east half of a tract of land in the town of Greenville, bought by me from A. D. Robey. Beginning at the N. E. corner of E. W. Terhune's lot; thence W. 108 feet; thence S. 71 feet; thence E. 108 feet to the beginning." The mortgage was filed for record March 11, 1880, and recorded March 13, 1880. It was claimed and proved that there was a mistake in the field notes contained in the mortgage; that one call was omitted, to wit: "Thence N. 71 feet." They should have been as follows: "Beginning at the N. E. corner of E. W. Terhune's lot; thence N. 71 feet; thence W. 108 feet; thence S. 71 feet; thence E. 108 feet to the beginning." On the 12th day of January, 1881, nearly twelve months after the mortgage had been placed upon record, S. M.

Hawkins deeded the land embraced in the last named set of field notes to N. B. Haney. This suit was brought by N. J. Carter, executrix of C. B. Carter, against S. M. Hawkins and N. B. Haney, and judgment for the amount due upon the note was asked against S. M. Hawkins, a correction of the field notes, and for a foreclosure of the mortgage lien against both defendants S. M. Hawkins and N. B. Haney. Hawkins and Haney pleaded general denial, and defendant Haney by amended answer pleaded *bona fide* purchaser without notice. Judgment against S. M. Hawkins for $178.30, the amount due upon the note, and all cost incurred as against S. M. Hawkins, and in favor of N. B. Haney, refusing to foreclose the mortgage lien, and for all cost incurred by him in the suit.

*Lewis & Nicholson*, for appellant, on sufficiency of the notice to Haney, cited: Ayres *v.* Duprey, 27 Tex., 607; Wallace *v.* Campbell, 54 Tex., 90; Grace *v.* Wade, 45 Tex., 522; Taylor *v.* Harrison, 47 Tex., 457; McLouth *v.* Hurt, 51 Tex., 120; Vaughan *v.* Greer, 38 Tex., 532; Smith *v.* Chatham, 14 Tex., 321.

*E. W. Terhune*, for appellee, on notice, cited: Barnes *v.* Jamison, 24 Tex., 362; Wilson *v.* Williams, 25 Tex., 54; Wade on Notice, secs. 38 *et seq.*, 158.

WILLIE, CHIEF JUSTICE.— It is unnecessary for us to consider any of the questions growing out of a supposed homestead right of Hawkins in the premises upon which the mortgage was sought to be enforced. There is no proof in the record tending to show that any such right existed at the time the mortgage was executed. Whilst the premises had at one time been occupied by Hawkins and his family as a homestead, the evidence shows that they had removed to another place and established a homestead upon it long previous to the making of the instrument which forms the basis of this suit. If the title to the lot was such as did not allow of its abandonment and a change of homestead to another place, the appellees should have shown it by evidence. Hawkins' homestead right, if he had any, was their defense, and it was no part of the appellant's case to show that such right did not attach to the land at the date of the mortgage.

The important question in the case is: Did Haney have notice of the mortgage at the time he purchased of Hawkins?

The mortgage was upon record at the time, and the land was described in it as the east half of a tract of land in the town of Greenville, bought by Hawkins from A. D. Robey. Then followed

what purported to be a statement of the courses and distances of the boundary lines of the tract. This made the first line to commence at the northeast corner of Terhune's lot and to run west, and the second line to run south, and the third line to run east to the place of beginning. These courses and distances, if followed, would not inclose the east half of the tract conveyed to Hawkins by Robey, and would place it upon a tract conveyed by Robey to Terhune. Was the description, taken altogether, sufficient to put Haney upon inquiry as to whether or not the property he proposed to buy from Hawkins embraced the land intended to be described in the mortgage?

It is a general rule that where the discrepancy between the property intended to be mortgaged, and that actually described in the recorded instrument, is of a substantial nature, the record will not operate as notice to subsequent purchasers. Thus where the property intended to be conveyed was the east half of a lot and was described as the west half (10 Vt., 555); or where a slave was described by a different name from the one he bore (1 Sloan, 396); or where a lot was described as the southeast quarter of an out lot, when the intention was to describe it as the southeast quarter of the northeast quarter of said out lot. McLouth v. Hunt, 51 Tex., 115.

The principle is that the subsequent purchaser has notice of that only which appears upon the face of the recorded instrument. In all the cases cited above, there was nothing appearing upon the face of the deeds as registered that could possibly lead a purchaser to suppose that the property intended to be included in the instrument was different from that which was actually described in the record book.

But the case is different when the description is ambiguous, or inconsistent the one part with another; the first declaring that the land mortgaged is that which the purchaser proposes to buy, and then giving such particulars as to its boundaries as would place it upon a different tract.

That is the present case.

Here it cannot be said that there is a substantial variance between the land described and that actually mortgaged. The east half of the tract conveyed by Robey to Hawkins is included in the tract which the latter proposed to sell to Haney; the lines mentioned in the mortgage would not include this half or any other part of the tract. One examining the record would therefore be in doubt — to state the case most favorably for the purchaser — whether the mortgage embraced the one tract or the other. In such case the

record would naturally excite inquiry as to which of the tracts of land the mortgage was intended to cover. In that event it becomes the duty of the purchaser to pursue the inquiry till the doubt is removed. Wade on Notice, § 183.

If A should convey to B a tract of land by the following description: "the east half of lot 20 in the town of Greenville, it being the west half of said lot 20," it would leave a doubt as to which half he intended to convey. A subsequent purchaser could not shut his eyes to the fact that the intention might have been to convey the east half, and say that he would construe it as meaning the west half, and claim as *bona fide* a purchase of the east half from the vendor.

Here the two descriptions contained in the mortgage are of different tracts of land. We see no reason why the purchaser Haney should be allowed to say that he will discard the first and apply the last so as to constitute himself an innocent purchaser.

But the case is stronger than this against the purchaser. The description of the lot sold, as the east half of another lot (which is designated in such manner as that no mistake in reference to it can be made), is in itself certain, and if left alone would be unmistakable. But the description by courses and distances is uncertain and incomplete; and left to themselves those lines would not, without a resort to presumptions, inclose and contain any land whatever. Besides, if they embraced any land at all, it would be the land of another, and not of the mortgagor. It is not certain but that this description, by course and distance, standing alone, might have been sufficient to put Haney upon notice that the land was erroneously described, he knowing the property and its surroundings, and that Terhune and not Hawkins owned the property described in the mortgage. The deed from Robey to Hawkins alluded to in the mortgage was on record before either the mortgage to Carter or the deed to Haney was executed, showing what land was intended to be described; and the title of Terhune was also on record at those dates, showing that if the description by courses and distances prevailed, Hawkins would mortgage Terhune's land and not his own.

It has been held that if the purchaser have any knowledge of the error, or from his knowledge of the property and its surroundings is able to interpret the record and give it the meaning it was intended to convey, it would be sufficient to charge him with notice. Wade on Notice, § 185; citing Erickson *v.* Rafferty, 79 Ill., 209. But whether this be so or not when the erroneous description stands alone, it certainly is true where the mistake is plainly to be

discovered from a previous full description of the premises mortgaged, taken in connection with a subsequent uncertain and improbable one, as attested by the language of the description itself, and confirmed by the necessary knowledge of the purchaser acquainted with the situation and surroundings of the property.

A purchaser examining a recorded instrument must look to all its parts and not content himself with so much as will by itself give him no notice, when the remainder contains statements which would put him upon further inquiry as to the title.

We think there was enough on the face of the instrument as recorded to put Haney upon inquiry as to the land intended to be mortgaged, and that he must be charged as having bought with constructive notice of the mortgage held by the appellant's testator upon the property.

The judgment in so far as it fails to foreclose the lien upon the property described in the petition as subject to the mortgage will be reversed, and the court here, proceeding to render such judgment as the court below should have rendered, adjudges that the appellant, as executor of C. B. Carter, deceased, recover of the defendant S. M. Hawkins $178.35, with interest at the rate of ten per cent. per annum from August, 1884, and that the mortgage sued on be so reformed as to describe the property mortgaged as the same is described in the plaintiff's petition, and that the said property be declared subject to said mortgage, and be sold as under execution in satisfaction of the same, as provided by law in case of the foreclosure of mortgages on real estate.

REVERSED AND RENDERED.

[Opinion delivered November 14, 1884.]